```
                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF VERMONT
                                       :
UNITED STATES OF AMERICA               :
                                       :
                                       :
      v.                               :       No. 2:07-cr-35
                                       :
                                       :
JOHN PERRY RYAN,                       :
      Defendant.                       :
                                       :
```

## OPINION AND ORDER

It is well established that "the Constitution requires the exclusion of evidence obtained by certain violations of the Fourth Amendment" such as unconstitutional searches and seizures. *Sanchez-Llamas v. Oregon*, 548 U.S. 331 (2006) (Roberts, C.J.) (citing *Mapp v. Ohio*, 367 U.S. 643, 655-657 (1961)). The Fourth Amendment recognizes and honors the sanctity of every individual's rights with respect to their own persons, houses, papers and effects; it does so by mandating that specific requirements be met before the state undertakes a search or seizure. In the present case, one such requirement was not met: The Government failed to specify on the face of the warrant the particular items that were to be seized. Because the search and seizure therefore violated the Fourth Amendment, Defendant John Ryan has moved to suppress the evidence seized as well as the

fruits of the unlawful search.[1]  For the reasons stated below, the Court hereby GRANTS the Defendant's Motion to Suppress (Doc. 21).

### I.  FACTS

On March 12, 2007, Special Agent Jamie West of Immigration and Customs Enforcement (ICE) submitted an application and affidavit in support of a warrant to search Ryan's residence at 948 Duclos Road, Braintree, Vermont. (Def.'s Mot. to Suppress Ex. A.)  The warrant was approved by the Magistrate Judge that afternoon, (Def.'s Mot. to Suppress Ex. B) and the Magistrate Judge ordered the application and supporting affidavit sealed that same day (Def.'s Mot. to Suppress Ex. C).  Although the items to be seized were described in the application and affidavit, the warrant included no such description. (Def.'s Mot. to Suppress Exs. A, B.)  In the space on the warrant reserved for a description of items to be seized, all that was written was the address of Ryan's residence.  (Def.'s Mot. to Suppress Ex. B.)

On March 14, 2007, ICE agents executed the search warrant, seizing three computers, a wireless media card, and miscellaneous documents and photographs.  (Def.'s Mot. to Suppress Ex. D.)

---

[1] Ryan has also argued that suppression is appropriate because the supporting affidavit included stale information and, alternatively, because the affidavit failed to demonstrate probable cause. (Def.'s Mot. to Suppress 1.)  The Court does not reach these issues because it finds that the warrant was invalid on its face.

2

There is no indication that any of the evidence seized exceeded the scope of what was requested in the application and affidavit. (Opp'n by Gov't to Mot. to Suppress 2.)  Nor is there any indication that the application or affidavit were physically attached to the warrant.  (Def.'s Motion to Suppress 6.)  Ryan has asserted that, at the conclusion of the search, Agent West provided him only with copies of the search warrant and inventory form.  (Mot. 3.)  On April 5, 2007, Ryan was indicted by the Grand Jury on charges of transportation and possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(1) and 2252A(a)(5)(B).

## II. DISCUSSION

The Government has conceded that the challenged search warrant is "invalid on its face." (Opp'n by Gov't to Mot. to Suppress 3.)  The Supreme Court recently confronted a warrant with a nearly identical omission and held that the omission rendered the warrant "plainly invalid." *Groh v. Ramirez*, 540 U.S. 551, 557 (2003).  Based on the patent deficiency in the warrant, the Court must regard the search as "warrantless." *Groh*, 540 U.S. at 558.  Nonetheless, the Government argues that exclusion is not appropriate in this case, and it has assembled two arguments in support of its position.  The Court will address each argument in turn.

**A.   Interests Protected by the Constitutional Guarantee**

First, the Government relies on *Hudson v. Michigan* for the proposition that exclusion is inappropriate if "the interest protected by the constitutional guarantee . . . would not be served by suppression of the evidence obtained." *Hudson v. Michigan*, 547 U.S. 586, 593 (2006).  In addition, the Government cites to a Seventh Circuit decision, *United States v. Stefonek*, 179 F.3d 1030 (7th Cir. 1999), in which the circuit panel confronted facts very similar to those that are before this Court.[2]  In *Stefonek*, the panel held that suppression was not required because "the violation did no harm to any of the interests in privacy or property that the Fourth Amendment protects."  179 F.3d at 1034.  The Court, however, finds that the Government has overstated the holding in *Hudson* and that the cited legal proposition does not apply to the facts presented here.  Nor is the Court persuaded by the reasoning in *Stefonek* in light of the Supreme Court's subsequent decisions in *Hudson* and *Groh*.

---

[2]   The Second Circuit has not had occasion to confront this issue.  The circuit has addressed the issue of whether specific language is adequately precise, *see, e.g., United States v. Bianco*, 998 F.2d 1112 (2d Cir. 1993); *United States v. Young*, 745 F.2d 733, 759 (2d Cir. 1984); however, none of these cases presented a complete absence of any description.  Although *Bianco* suggests that a lack of particularity in the warrant may be cured by reference to the affidavit even if there is no express incorporation,  998 F.2d at 1116-17, this dictum does not survive the Supreme Court's decision in *Groh*.

The first deficiency in the Government's argument results from its failure to place the cited proposition from *Hudson* in context.  *Hudson* did not involve a warrantless search; to the contrary, the law enforcement officers obtained and acted pursuant to a valid warrant.  The sole constitutional violation in *Hudson* arose when the officers executing the warrant failed to comply with the knock-and-announce requirements.  As such, the Court's decision did not provide a methodology for determining whether to exclude evidence seized pursuant to a warrantless search of a defendant's home.  Rather, the Court addressed the issue of whether it was appropriate to expand the exclusionary rule to apply to knock-and-announce violations.[3]  Moreover, the Court specifically recognized the import of this distinction, noting that "cases excluding the fruits of unlawful warrantless searches say nothing about the appropriateness of exclusion to vindicate the interests protected by the knock-and-announce requirement."  *Id.* at 593 (citations omitted).

In fact, the Court has consistently raised the issue of whether suppression serves a constitutionally protected interest within its broader inquiry into attenuation.  *See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963); *United States v.*

---

[3]  As discussed in greater detail below, the *Hudson* decision may be best understood in the context of other cases in which the Court has declined to expand the exclusionary rule "beyond its core application."  *Tirado v. Comm'r*, 689 F.2d 307, 310 (1982).

5

*Ceccolini*, 435 U.S. 268, 274-75, 279 (1978); *Hudson*, 547 U.S. at 592-93.  As such, the statement cited by the Government must be read as part and parcel of the well-established rule that exclusion is appropriate if the evidence has been seized by virtue of the illegality, and not if the evidence has been seized "by means sufficiently distinguishable to be purged of the primary taint."  *Hudson*, 547 U.S. at 592 (quoting *Wong Sun*, 371 U.S. at 488).

In *Hudson*, the Court offered a concrete example of a situation in which the interests protected by the constitutional guarantee are too attenuated from the evidence which the defendant seeks to suppress.  The Court cited to *New York v. Harris*, 495 U.S. 14 (1990), in which the police effected an illegal, warrantless arrest within Harris' home.  The Court declined to extend the exclusionary remedy to statements made by Harris outside his home, holding that suppression of these statements "would not serve the purpose of the rule that made Harris' in-house arrest illegal."  *Hudson*, 547 U.S. at 593 (quoting *Harris*, 495 U.S. at 20).  The instant case is readily distinguishable.  The evidence challenged by Ryan was seized pursuant to the illegal, warrantless search itself; there was neither spatial nor temporal attenuation.  Furthermore, the seizure violated precisely those privacy and property interests which the Fourth Amendment protects.

The second major deficiency in the Government's reasoning results from its exceptionally narrow definition of which interests are protected by the Fourth Amendment.  The Government focuses solely on the particularity requirement in the Fourth Amendment and argues that its purpose is "to prevent general warrants."  (Opp'n by Gov't to Motion to Suppress 4-5.)  Although this argument has been articulated by the circuit panel in *United States v. Stefonek*,179 F.3d 1030, 1033 (7th Cir. 1999),[4] the Government's reasoning runs contrary to the Supreme Court's decisions in *Hudson* and *Groh*.

In its discussion of which interests are constitutionally protected in the context of a warrantless search, the Court in *Hudson* espoused a much broader definition.  Justice Scalia wrote for the majority:

---

[4]  The reasoning of the panel in *Stefonek* may be paraphrased in common parlance as "no harm, no foul"; the panel argues that exclusion is inappropriate because the defendant did not suffer any "actual damage" to his constitutionally protected interests. *Stefonek*, 179 F.3d at 1034.  Yet insofar as the panel posits that the purpose of the exclusionary remedy is to redress injuries to a defendant's individual rights, the argument meets a tall analytic hurdle.  The Supreme Court has flatly rejected this rationale, *see, e.g.*, *United States v. Leon*, 468 U.S. 897, 906 (stating that "exclusionary rule is neither intended nor able to 'cure the invasion of the defendant's rights which he has already suffered'") (quoting Stone v. Powell 428 U.S. 465, 540 (1976)), leaving no doubt that the paramount rationale animating the exclusionary rule is deterrence. *See, e.g., id.* at 907.  Were it otherwise, the good-faith exception created in *Leon* would be unthinkable, since *Leon* clearly involved actual damage to the defendant's individual rights.  *See Stefonek*, 179 F.3d at 1034.

> Until a valid warrant has issued, citizens are entitled to shield "their persons, houses, papers, and effects" from the government's scrutiny. Exclusion of the evidence obtained by a warrantless search vindicates that entitlement. The interests protected by the knock-and-announce requirement are quite different—and do not include the shielding of potential evidence from the government's eyes.

*Hudson,* 547 U.S. at 593 (citation omitted). The Government in this case invaded Ryan's home, his papers and his effects when it executed the illegal, warrantless search. The Supreme Court, in the very case on which the Government most heavily relies, has stated that exclusion would vindicate Ryan's constitutionally protected interests.

Even assuming that the Government's focus on the particularity requirement is appropriate, the Government's definition of the interest protected by this requirement is far too constrained. The Supreme Court has "long held . . . that the purpose of the particularity requirement is not limited to the prevention of general searches." *Groh*, 540 U.S. at 561. In fact, the Court in *Groh* tallied a number of other goals served by the particularity requirement: The requirement prevents "the seizure of one thing under a warrant describing another," *id.*; prevents the issuance of a warrant "on vague or dubious information," *id.*; and provides a guarantee to "the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his

8

power to search." *Id.* (quoting *United States v. Chadwick*, 433 U.S. 1 (1977)).

By requiring a particularized statement of what is to be seized, we ensure that the Magistrate has "actually found probable cause to search for, and to seize, every item mentioned in the affidavit." *Id.* at 560. For example, the Magistrate may reasonably find that probable cause exists to seize a defendant's computer, but not to rummage through his house searching for books, magazines and correspondence. "The mere fact that a Magistrate approved the warrant does not necessarily establish that he [or she] agreed that the scope of the request should be as broad as the affiant's request."

The particularity requirement must be understood as an essential ingredient in the larger process required by the Fourth Amendment, a process which seeks to balance the public's interest in effective law enforcement against the individual's privacy and property rights. For this reason, it may be a dangerous intellectual enterprise to attempt to neatly parcel out specific, distinct goals for each phrase and clause of the Fourth Amendment. In the instant case, the Government has failed even to acknowledge the numerous overlapping goals served by the particularity requirement, let alone to establish that they would not be served by exclusion.

**B.   Deterrence Versus the Social Costs of Exclusion**

The Government's second argument against suppression is that the deterrence benefits of exclusion in this case do not outweigh its substantial social costs.  (Opp'n by Gov't to Mot. to Suppress 6-7.)  To support this position, the Government has selected bite-size morsels from a number of decisions in which the Supreme Court and Second Circuit have used this balancing analysis.  *Id*.  In addition, the Government has argued that deterrence will not be effective in this case because the error resulted from negligence rather than willful misconduct.  *Id*. at 7-8.

Once again, the Government has not adequately placed the cited legal proposition in context.  It is beyond dispute that the Court has on numerous occasions relied on a balancing test, sometimes over the clamor of dissenters who have decried it as nothing more than "judicial stagecraft," *Leon*, 468 U.S. at 949 (Brennan, J., dissenting); however, as the Second Circuit has observed, in each case the Court was considering "extension of the rule beyond its core application." *Tirado*, 689 F.2d at 310; *see, e.g., United States v. Calandra*, 414 U.S. 338, 349 (1974) (considering costs and benefits of extending exclusionary rule to grand jury proceedings); *United States v. Janis*, 428 U.S. 433, 453-54 (1976) (same with regard to civil proceedings); *Pennsylvania Bd. of Probation & Parole v. Scott*, 524 U.S. 357,

10

363 (1998) (same with regard to parole revocation proceedings); *Hudson*, 547 U.S. at 591-93 (same with regard to knock-and-announce violation).

The instant case, in contrast, falls clearly within what has been termed the "core application" of the exclusionary rule: Ryan seeks exclusion "of illegally seized items as affirmative evidence in the trial of the matter for which the search was conducted." *Tirado*, 689 F.2d at 310. In fact, the balancing analysis in these cases consistently relies on an implicit core application of the exclusionary rule; otherwise all discussion of "additional marginal deterrence" would be rendered meaningless. *See id.; Janis*, 428 U.S. at 453-54; *Calandra*, 414 U.S. at 351-52.

The Government also challenges whether exclusion in this case will achieve any deterrence. *Leon* created a good-faith exception to the strictures of the exclusionary rule, holding that deterrence is most effective in cases of willful or negligent misconduct by law enforcement. *Leon*, 468 U.S. at 918. The Government in this case advocates a further whittling, proposing a new exception to the exclusionary rule in cases where the constitutional violation resulted from negligence rather than intentional misconduct.

The Government does not offer legal precedent for this position so much as an argument that is rich in historical antecedents. In essence, the Government argues that error is

11

endemic to the human condition, that deterrence is futile, and that the Court should forsake all attempts at remedy. Undergirding this argument is a fallacy that has been refuted by moral philosophers and pragmatists alike: the mere existence of human fallibility does not and should not compel us to plunge headlong into fatalism.  *See, e.g.,* Diogenes Laertius, *The Lives and Opinions of Eminent Philosophers* Book VII, Ch. 1, § 23 (C.D. Yonge, trans., London, George Bell and Sons 1895). Constitutional guarantees, procedural safeguards and judicial review may minimize certain mistakes even if they cannot completely eradicate all error.

Furthermore, there are compelling reasons to believe that law enforcement agencies are well-equipped to address issues of negligence.  In fact, agencies may be able to adopt institutional measures to root out errors that result from negligence more easily than those resulting from willful and calculated misconduct.  For example, the agency may choose to provide additional training to officers on reviewing warrants or to adopt rules whereby warrants are routinely reviewed by an officer other than the one who has prepared the application and affidavit.

In sum, the Court finds that this case falls within the core application of the exclusionary rule and that exclusion in this case will achieve significant deterrence.

**IV. CONCLUSION**

For the reasons stated above, the Court hereby GRANTS the Defendant's Motion to Suppress (Doc. 21).

Dated at Burlington, Vermont this 31st day of March, 2008.

                                          /s/ William K. Sessions III
                                          William K. Sessions III
                                          Chief Judge, U.S. District Court