**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

UNITED STATES OF AMERICA      :
     :
         v.      :    Case No. 2:07-CR-35
     :
JOHN PERRY RYAN      :


**OPINION and ORDER**

Before the Court are three motions[1] filed by the parties:

(1) the government's Motion for Reconsideration of the Court's

March 31, 2008 ruling granting defendant John Perry Ryan's Motion

to Suppress (Doc. 80); (2) Ryan's Motion regarding the

government's burden to prove the use of real children through

expert testimony (Doc. 40); and (3) Ryan's Motion to Dismiss

Counts Two and Five of the Superseding Indictment (Doc. 71).[2]

The Court considers each of these motions in turn.

_____

[1] At the April 23, 2009 hearing on the government's Motion for
Reconsideration, the Court orally denied as moot Ryan's Motion to
Dismiss (Doc. 41) and Amended Motion to Dismiss (Doc. 70) because
Ryan is no longer charged with violating the statute at issue in
these motions.

[2] Since the original indictment in this case, the government has
filed two superseding indictments.  On October 2, 2008, the
government submitted a Superseding Indictment charging Ryan with
violating 18 U.S.C. § 2252(a)(1); 18 U.S.C. § 1466A(a)(1); 18
U.S.C. § 2252A(a)(3)(B); and 18 U.S.C. § 2253 (Doc. 62).  Ryan
was arraigned and pled not guilty to these charges on October 10,
2008.  On April 16, 2009 the government filed a six count Second
Superseding Indictment (Doc. 90), and on April 23, 2009, Ryan was
arraigned and pled not guilty to all counts of this indictment.
The Second Superseding Indictment adds the element of interstate
commerce to counts two and five, each of which charges Ryan with
distributing obscene visual depictions in violation of 18 U.S.C.
§ 1466A(a)(1).

## I. The Government's Motion for Reconsideration

The Court held hearings related to this motion on March 20 and April 23, 2009, and the parties submitted supplemental briefs on whether *Herring v. United States*, __ U.S. __, 129 S.Ct. 695 (2009) has any impact on the Court's decision to grant Ryan's Motion to Suppress Evidence (Doc. 32). Having considered the parties' briefs and the arguments of counsel, the Court reconsiders its prior ruling and adheres to its earlier decision.

## Factual Background

On March 12, 2007, Immigration and Customs Enforcement (ICE) Special Agent Jamie West applied for a warrant to search Ryan's residence in Braintree, Vermont. The application and supporting affidavit described the items to be seized, and on the same day, the Magistrate Judge approved the warrant. The warrant contained no description of the items to be seized. The space on the warrant for a description of items to be seized listed only Ryan's address.

At the hearings on this motion, Agent West testified that he did not read the warrant after receiving it from the Magistrate Judge. The government also stipulated that all five agents who were assigned to assist Agent West did not read the search warrant before or during execution of the search.

On March 14, 2007, federal agents executed the warrant and seized three computers, a wireless media card, and miscellaneous

documents and photographs.  These items were listed in an
attachment to Agent West's application and affidavit in support
of the search warrant, but these documents were not physically
attached to the warrant.  At the conclusion of the search, the
agents left Ryan a copy of the search warrant and an inventory
form.  They did not leave Ryan a copy of the application for the
warrant or the accompanying affidavit and attachments.  On April
5, 2007, a Grand Jury indicted Ryan for transporting and
possessing child pornography in violation of 18 U.S.C. §§
2252A(a)(1) & 2252A(a)(5)(B).  Ryan filed a Motion to Suppress
the evidence seized pursuant to the search (Doc. 21), which the
Court granted on March 31, 2008 (Doc. 32).

**Discussion**

A court may reconsider an earlier ruling or decision where
there is an intervening change in controlling law, among other
circumstances.  *See* Fed. R. Civ. P. 60(b); *Virgin Atl. Airways,
Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).
The government argues that the U.S. Supreme Court's January 14,
2009 opinion in *Herring* is controlling law that should result in
the Court reversing its prior ruling to grant Ryan's Motion to
Suppress.  After carefully reviewing *Herring* and other recent
relevant cases, the Court concludes that *Herring* does not justify
changing its original decision.

A.   *Herring v. United States*

*Herring* addresses the issue of whether the good faith exception to the exclusionary rule applies when the police make a negligent error in the execution of a warrant.  In *Herring*, a law enforcement officer in Coffee County, Alabama, learned that Bennie Dean Herring was retrieving an item from a truck impounded at the Sheriff's Department.  The investigator asked the county warrant clerk, Sandy Pope, whether Herring had any outstanding arrest warrants.  Herring had no outstanding warrants in Coffee County.  The investigator then asked Pope to check for any outstanding warrants in neighboring Dale County.  Pope learned from the Dale County warrant clerk, Sharon Morgan, that there was an outstanding warrant for Herring's arrest in Dale County, and Pope gave this information to the investigator.  She then asked Morgan to fax a copy of the Dale County warrant to her.

As Herring left the impound lot, the investigator and a deputy followed his vehicle, stopped and arrested him.  Searching Herring after the arrest, the officers found methamphetamine on Herring and a pistol in his car.  In the meantime, Morgan reviewed her files to retrieve and fax a copy of Herring's outstanding warrant to Pope.  Morgan could not find the warrant, and called a court clerk, who informed Morgan that the warrant had been recalled five months earlier.  Morgan called Pope to explain the error, and Pope contacted the investigator, but

Herring had already been stopped and searched by the time the investigator learned of the invalid warrant.

After Herring was charged with illegally possessing a firearm and drugs in violation of 18 U.S.C. § 922(g)(1) and 21 U.S.C. § 844(a), he moved to suppress the evidence seized because the arrest warrant was invalid. The District Court and Court of Appeals for the Eleventh Circuit upheld the search as admissible under the good-faith rule of *United States v. Leon*, 468 U.S. 897 (1984). *Herring*, 129 S. Ct. at 699.

The Supreme Court affirmed. Critical to its analysis was the fact that "[t]he Coffee County officers did nothing improper" and that the negligence of someone in the neighboring county who should have updated the records to reflect the recall of Herring's arrest warrant was "not enough by itself to require 'the extreme sanction of exclusion.'" *Id*. at 700 (quoting *Leon*, 468 U.S. at 916). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system . . . the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id*. at 702.

## B. *Herring* Does Not Change the Result Here

The government argues that *Herring* changes the law governing the application of the exclusionary rule and alters the result reached in this case: in weighing the costs and benefits of excluding evidence obtained in violation of the Fourth Amendment, merely negligent police error is not sufficient to outweigh the costs to society of suppressing such evidence. In other words, the culpability of police conduct must be greater than mere negligence. The government focuses exclusively on the negligent "clerical error on the face of the warrant" (*see* Gov't Mot. 8) (Doc. 80) and ignores the significant factual differences between this case and *Herring*. Contrary to the government's suggestion, the police conduct here was not "entirely reasonable and marginally negligent at worst." *See* Gov't Supp. Mem. 5 (Doc. 97).

The Fourth Amendment requires search warrants to particularly describe the items to be seized, and a search executed with a warrant that fails to do so is clearly unreasonable under the Fourth Amendment. *See* U.S. Const. amend. IV; *Groh v. Ramirez,* 540 U.S. 551, 563 (2004). "Given that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid." *Groh*, 540 U.S. at 563. The particularity requirement for search

6

warrants is especially important in the context of a search of a person's home.

Few locations have a greater expectation of privacy than one's home: "'[a]t the very core' of the Fourth Amendment 'stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" *Kyllo v. United States*, 533 U.S. 27, 31 (2001) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)). As a result, Fourth Amendment jurisprudence recognizes heightened protection for searches of a person's home. A search conducted with a warrant that lacks particularity is considered a warrantless search, and "'searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Groh*, 540 U.S. at 558, 559 (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)). "With few exceptions, the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no." *Kyllo*, 533 U.S. at 31 (citations omitted). Given the heightened privacy interests involved in searches of a person's home, law enforcement officers must take great care to ensure that these searches are lawfully authorized and executed. *See, e.g., Groh*, 540 U.S. at 563.

As the government recognizes, this case involves a unique and narrow set of circumstances related to the warrantless search of Ryan's home. There is no dispute that the search warrant was

invalid on its face.  It contained only Ryan's address, with no
specific description of the items to be seized.  Thus, the
warrant plainly reflected its illegality, and it was impossible
for any reasonable officer who had seen the warrant to believe
that this warrant was valid.  The agents who searched Ryan's home
admitted that they did not read the warrant prior to executing
the search.  "[E]ven a cursory reading of the warrant in this
case – perhaps just a simple glance – would have revealed a
glaring deficiency that any reasonable police officer would have
known was constitutionally fatal."  *Id*. at 564.  The agents'
failure to read the warrant was not mere negligence.  First, the
defect in the warrant was not a negligent or minor typographical
error:

> This warrant did not simply omit a few items from a
> list of many to be seized, or misdescribe a few of
> several items.  Nor did it make what fairly could be
> characterized as a mere technical mistake or
> typographical error.  Rather, in the space set aside
> for a description of the items to be seized . . . the
> warrant did not describe the items to be seized *at all*.

*Groh*, 540 U.S. at 558.

Second, given the privacy interests in a person's home and
the extensive nature of the search here (the application for the
search warrant described the scope of the search of Ryan's home
to include computers, related equipment, and records related to
such equipment; books and magazines; originals, copies and
negatives of photographs; motion pictures, videos, films and

8

other recordings; envelopes, letters and other correspondence; books, ledgers or other records; credit card information; and records reflecting ownership of the premises, such as utility and telephone bills, mail or other correspondence) (*see* Attach. C, Application & Aff. for Search Warrant) (Doc. 1) the agents' failure to even read the warrant constituted gross negligence.

This is a critical distinction from *Herring*. The law enforcement officers in *Herring* relied upon apparently reliable information that existed. In this case, the agents relied upon a facially invalid warrant that failed to particularly describe the items to be seized. Exclusion is appropriate where a "warrant was so lacking in the indicia of probable cause that an objectively reasonable officer should not have relied on it." *United States v. Lindsey*, 596 F. Supp. 2d 55, 62 (D. D. C. 2009)(finding, post-*Herring*, that the good faith exception in *Leon* did not apply where "an objectively reasonable officer could not have relied on the warrant in this case" and suppressing evidence found in search of home where search warrant was based on stale evidence); *see also United States v. Lester*, No. 1:09cr00002, 2009 WL 902354, at *6-7 (W. D. Va. Apr. 1, 2009) (distinguishing *Herring* and finding that officers could not reasonably rely on search warrant because it was not based on probable cause).

The government cites *Massachusetts v. Sheppard*, 468 U.S. 981 (1984) to support its contention that the errors in the warrant here are the result of mere negligence and therefore do not warrant exclusion. *See* Gov't Supp. Mem. (Doc. 97). *Sheppard* is easily distinguishable. There, a police officer used an incorrect form for the search he sought to have authorized. Upon presenting the warrant application to the judge, the officer informed the judge that he had the incorrect warrant form, and the judge told the officer that he would make the necessary changes. The judge made some, but not all, of the changes required to validate the warrant, and assured the officer that "the warrant was sufficient authority in form and content to carry out the search as requested." *Sheppard*, 468 U.S. at 986. In upholding this search, the Supreme Court found that "[t]he officers in this case took every step that could reasonably be expected of them," and any reasonable officer "would have concluded . . . that the warrant authorized a search for the materials outlined in the affidavit." *Id*. at 989.

By contrast, in this case the Magistrate Judge did not affirmatively assure Agent West that the search warrant was valid, and the agents did not take "every step that could reasonably be expected of them." Agent West did not inform the Magistrate Judge that the face of the warrant failed to particularly describe the items to be seized. "The mere fact

that the Magistrate issued a warrant does not necessarily establish that he agreed that the scope of the search should be as broad as the affiant's request." *Groh*, 540 U.S. at 561, n.4 (pointing out the difference between *Groh* and *Sheppard* because the officer in *Groh* "did not alert the Magistrate to the defect in the warrant."). More importantly, the agents admitted that they did not read the warrant before executing it. At a minimum, this is one step that any officer would reasonably be expected to take before searching a person's home. In short, *Sheppard* offers little support for the government's position.

The government also asserts that suppression will not serve the exclusionary rule's important purpose to deter future conduct because "the conduct here that gave rise to the error involved the judiciary and not the police." Gov't Mot. 7 (Doc. 80). Even assuming that the lack of particularity in the warrant was the Court's error,[3] the warrant was clearly invalid on its face and the agents "'would have known that the search was illegal' in light of 'all of the circumstances.'" *Herring*, 129 S.Ct. at 703 (quoting *Leon*, 468 U.S. at 922 n.23); *see also Groh*, 540 U.S. at 561 n.4 ("Nor would it have been reasonable for [the officer] to rely on a warrant that was so patently defective, even if the Magistrate was aware of the deficiency."). The agents here

---

[3] This is disputable because as the government admits, the United States Attorney's Office was responsible for preparing a draft of the warrant to present to the Court. *See* Gov't Mot. 6 (Doc. 80).

should have read the warrant, especially since they used the
warrant to seize an assortment of items and documents.

A warrant lacking particularity will no doubt be brought
promptly to the attention of the United States Attorney's Office
for correction.  Thus, as the Court explained in its prior
ruling, suppressing the evidence here will have a significant
deterrent effect.  Ct. Opin. & Order 12 (Doc. 32); *see also*
*United States v. Burke*, __ F. Supp. 2d __,  No. RWT-08-367, 2009
WL 624015, at *14 (D. Md. Mar. 10, 2009) (considering *Herring* and
suppressing evidence obtained during traffic stop where officers
had no probable cause to stop vehicle and exclusion was required
in order to deter "stops lacking any real pretext . . . lest
police misconduct become the order of the day."); *United States*
*v. Parson*, 599 F. Supp. 2d 592, 608, 609 (W. D. Pa. 2009)
(suppressing evidence post-*Herring* where agents' tactics in
obtaining consent to search defendant's home "violated any fair
understanding of the privileges of privacy" under the
Constitution and suppression was necessary "to deter law
enforcement from future brazen misrepresentations, and abuses of
the consent exception.").

For the reasons described above, the Court has reconsidered
its prior opinion and concludes that *Herring* does not affect its
original analysis in this case.  The Court adheres to its earlier
ruling granting Ryan's Motion to Suppress.

## II. Ryan's Motion Regarding the Government's Burden to Prove the Use of Real Children through Expert Testimony (Doc. 40)

Ryan asks the Court to determine whether the government must provide expert testimony to prove that the visual depiction of a minor engaging in sexually explicit conduct that Ryan is charged with transporting and shipping was produced using an actual child.

As a preliminary matter, Ryan's motion addresses the initial indictment in this case, which charged Ryan with violating 18 U.S.C. § 2252A(a)(1) by transporting or shipping child pornography interstate (Doc. 10). The definition of child pornography under this statute requires, among other things, that its production involve "the use of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2256(8)(A). Ryan is no longer charged with this offense. Instead, the current Second Superseding Indictment (Doc. 90) charges Ryan with violating 18 U.S.C. § 2252(a)(1) by transporting or shipping in interstate commerce a visual depiction of a minor engaging in sexually explicit conduct. Like the definition of child pornography contained in 18 U.S.C. § 2256(8)(A), however, this statute also requires that "the producing of such visual depiction involve[] the use of a minor engaging in sexually explicit conduct; and such visual depiction is of such conduct." 18 U.S.C. § 2252(a)(1)(A) & (B). To the extent that this raises issues similar to those involving the use of actual or "virtual"

children in the creation of an image that requires proof at trial, the Court considers Ryan's motion. *See, e.g., United States v. Salcido,* 506 F.3d 729 (9th Cir. 2007) (considering whether government was required to prove use of actual children through expert testimony where defendant was convicted of violating 18 U.S.C. §§ 2252(a)(2) & 2252(a)(4)(B)).

The basis of Ryan's challenge is rooted in the U.S. Supreme Court's determination that two prior definitions of child pornography contained in the Child Pornography Prevention Act of 1996 ("CPPA"), 18 U.S.C. §§ 2251 *et seq.*, were overbroad and unconstitutional. *See Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002). The first provision defined child pornography to include visual depictions that are or appear to be of a minor engaging in sexually explicit conduct, while the second provision defined child pornography to include any sexually explicit image advertised or promoted or distributed in such a manner that conveys the impression that it depicts a minor engaging in sexually explicit conduct. *See* former 18 U.S.C. §§ 2256(8)(B), (D); *Free Speech Coalition*, 535 U.S. at 241-43. As the Supreme Court explained, under *Miller v. California,* 413 U.S. 15 (1973), pornographic images may be banned if they meet the *Miller* test for obscenity,[4] or, under *New York v. Ferber*, 458 U.S. 747

---

[4] The three-part *Miller* test is: (a) "whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest; (b)

14

(1982), pornography involving actual minors may be banned

regardless of whether it meets the *Miller* obscenity test because

of "the State's particular and more compelling interest in

prosecuting those who promote the sexual exploitation of

children." *Free Speech Coalition*, 535 U.S. at 240 (quotations

omitted).  In short, "obscene material depicting (actual or

virtual) children engaged in sexually explicit conduct" is not

protected by the First Amendment. *United States v. Williams*, __

U.S. __, 128 S. Ct. 1830, 1839 (2008).

The defect in the CPPA's definitions was that they included

a significant amount of material that was not obscene under

*Miller* nor child pornography as defined by *Ferber*.  The Supreme

Court found that the "appears to be" language in the CPPA

definition captured "virtual child pornography," material that

has "no more than a remote connection between speech that might

encourage thoughts or impulses and any resulting child abuse."

*Free Speech Coalition*, 535 U.S. at 250, 253.  In the second

definition at issue, the language "conveys the impression" makes

the content of the material irrelevant; "[t]he determination

turns on how the speech is presented, not on what is depicted."

*Id*. at 257.  As a result, both definitions prohibited lawful as

---

whether the work depicts or describes, in a patently offensive
way, sexual conduct specifically defined by the applicable state
law; and (c) whether the work, taken as a whole, lacks serious
literary, artistic, political, or scientific value."  *Miller*, 413
U.S. at 24 (quotations omitted).

well as unlawful speech under *Miller* and *Ferber*, and because they banned "a substantial amount of protected speech," the definitions ran afoul of the First Amendment. *Id*. at 255-58.

In light of *Free Speech Coalition*, several courts have considered whether the government must provide expert testimony to establish that actual children are used in cases where an element of the crime involves the visual depiction of an actual minor engaging in sexually explicit conduct. Ryan relies on *United States v. Irving*, 452 F.3d 110 (2d Cir. 2006) to argue that the government must use expert testimony to establish that a real child was used in the production of the visual depiction that Ryan is charged with transporting in the first count of the Second Superseding Indictment.

The defendant in *Irving* was convicted (among other counts) of receiving, distributing and possessing child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(B) & 2252A(a)(5)(B). Irving challenged the sufficiency of the evidence for these counts, claiming that expert testimony was required. *Irving* recognized that *Free Speech Coalition* "noted the possible evidentiary difficulty of distinguishing virtual and actual child pornography, [but] it did not establish a bright-line rule requiring that the government proffer a specific type of proof to show the use of an actual child." *Irving*, 452 F.3d at 121. Accordingly, the *Irving* court held that the government is not

required to use expert testimony to prove that actual children are depicted, and limited its holding to the types of materials before it – video images or MPEGs. *Id.* at 122. Given these limits, Ryan urges this Court to rule that expert testimony is required in the case of still images, like the one at issue in the first count of the Second Superseding Indictment here.

In addition to *Free Speech Coalition*, central to the *Irving* court's analysis was the fact that no circuit court of appeals confronted with this issue had adopted a rule requiring an increased burden of proof for the government to prove the actual use of a minor. *See id.* at 121. While the government must present proof that visual depictions are of actual children, "expert testimony is not required for the government to establish that the images depicted an actual minor . . . [and] there seems to be general agreement among the circuits that pornographic images themselves are sufficient to prove the depiction of actual minors." *Salcido*, 506 F.3d at 733-34 (not requiring expert testimony to establish use of actual minor in images); *see also United States v. Rodriguez-Pacheco*, 475 F.3d 434, 440-41 (1st Cir. 2007) (same); *United States v. Slanina*, 359 F.3d 356, 357 (5th Cir. 2004) (same); *United States v. Farrelly*, 389 F.3d 649, 654-55 (6th Cir. 2004) (same), *abrogated on other grounds by United States v. Williams,* 411 F.3d 675 (6th Cir. 2005); *United States v. Deaton*, 328 F.3d 454, 455 (8th Cir. 2003) (upholding

conviction where jury was instructed that it was required to find that production of images involved use of an actual minor); *United States v. Kimler*, 335 F.3d 1132, 1142 (10th Cir. 2003) (declining to adopt rule that requires expert testimony to prove use of actual child in illegal image).

Given this weight of authority and the reasoning of *Irving*, this Court believes that had the *Irving* court been faced with still, rather than moving or video, images, it would have reached the same result:  that the government is not required to offer expert testimony to prove the use of actual children in an illegal image.  The government is free to select the method of proof that it will use to show at trial that any illegal image depicts an actual minor, but it still bears the burden of proving that any image it offers is that of an actual child. Accordingly, Ryan may still challenge the government's method of proof at trial through evidentiary objections and by renewing this motion at the end of the government's case.

For the foregoing reasons, Ryan's motion requiring the government to use expert testimony is **denied**.


### III. Ryan's Motion to Dismiss Counts Two and Five

Counts Two and Five of the Second Superseding Indictment charge Ryan with violating 18 U.S.C. § 1466A(a)(1) by knowingly

distributing in interstate commerce obscene visual depictions of minors engaging in sexually explicit conduct (Doc. 90). 18 U.S.C. § 1466A(a)(1) makes it illegal to knowingly produce, distribute, receive or possess with intent to distribute a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting, that depicts a minor engaging in sexually explicit conduct and is obscene. Ryan attacks 18 U.S.C. § 1466A(a)(1) as unconstitutionally overbroad and vague, and moves to dismiss both these counts (Doc. 71). The crux of Ryan's argument is that this statute reaches materials that do not involve actual children, such as drawings, cartoons and virtual images of children engaging in sexual acts.[5] Ryan further contends that the constitutionality of obscenity statutes, such as 18 U.S.C. § 1466A(a)(1), has been called into question by *Lawrence v. Texas,* 539 U.S. 558 (2003), which invalidated legislation prohibiting sodomy on privacy grounds.

Two circuit courts of appeal recently have considered challenges to 18 U.S.C. § 1466A(a)(1), and both have upheld this law as constitutionally valid (the Court is not aware of any appellate decision finding this law unconstitutional). *See United States v. Schales*, 546 F.3d 965 (9th Cir. 2008); *United States v. Whorley*, 550 F.3d 326 (4th Cir. 2008). Under the First

---

[5] The Court limits its review to a facial attack of the statute, since Ryan supplies no information as to how this law is unconstitutional as applied to the specific facts of his case.

Amendment's overbreadth doctrine, "a statute is facially invalid if it prohibits a substantial amount of protected speech." *Williams*, 128 S. Ct. at 1838. The *Schales* court recognized that the Supreme Court has repeatedly upheld laws that prohibit obscene material if the laws only reach material that is obscene under *Miller*. *Schales*, 546 F.3d at 971. Evaluating 18 U.S.C. § 1466A(a)(1) in light of this jurisprudence, *Schales* upheld the statute because it requires the government to meet the *Miller* obscenity standard. *Id.* at 971-72; *see also Whorley*, 550 F.3d at 337 (finding 18 U.S.C. § 1466A(a)(1) "a valid restriction on *obscene speech* under *Miller*"). By its very terms, 18 U.S.C. § 1466A(a)(1) requires proof that the visual depiction of a minor engaging in sexually explicit conduct is obscene. Therefore, it is not overbroad.

Similarly, 18 U.S.C. § 1466A(a)(1) is not vague. "To avoid being unconstitutionally vague, a penal statute must 'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Schales*, 546 F.3d at 972 (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). Again, turning to Supreme Court cases that uphold obscenity laws in the face of vagueness challenges, *Schales* notes that federal obscenity statutes are construed to incorporate *Miller's* obscenity standards in order to

avoid being unconstitutionally vague. *Id*. at 972-73. Like these statutes, 18 U.S.C. § 1466A(a)(1) is limited to prohibiting obscene material as defined by *Miller*, and, as a result, it, too, is not unconstitutionally vague.

Lastly, Ryan suggests that *Lawrence* calls into question obscenity laws that are based on protecting public morality. Def. Mot. 2 (Doc. 71). According to Ryan, *Lawrence* teaches that "Congress can no longer legislate moral codes and prohibit consenting adults from access to obscene materials." *Id*. at 2. Unlike the privacy rights protecting "the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing," *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 65 (1973), obscenity laws such as 18 U.S.C. § 1466A(a)(1) involve more public conduct of, for example, distribution. The Supreme Court has addressed the relationship between this type of obscenity statute and the constitutional right to privacy: "commerce in obscene material is unprotected by any constitutional doctrine of privacy." *Paris Adult Theatre,* 413 U.S. at 69.

More importantly, *Lawrence* did not expressly, or impliedly, overrule the Supreme Court's long line of cases involving obscenity laws, such as *Miller*. The Supreme Court instructs courts to not conclude that a more recent case impliedly overrules earlier precedents, *Agostini v. Felton*, 521 U.S. 203,

237 (1997), and courts of appeal "'should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.'" *Id.* (quoting *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484 (1989)). There is simply no basis for Ryan's argument that *Lawrence* calls into question obscenity statutes like 18 U.S.C. § 1466A(a)(1). This Court is aware of only two circuit courts of appeal that have considered this same issue – *Lawrence's* impact on federal obscenity statutes – and both courts have declined to read *Lawrence* so broadly. *See United States v. Extreme Associates, Inc.*, 431 F.3d 150, 162 (3rd Cir. 2005) (reversing district court decision finding federal statutes criminalizing commercial distribution of obscene materials unconstitutional on grounds that Supreme Court precedent affirms "the constitutionality of the federal statutes regulating the distribution of obscenity under First Amendment and substantive due process privacy rights"); *United States v. Coil*, 442 F.3d 912, 917 (5th Cir. 2006) (upholding constitutionality of federal transportation of obscenity statute based on Supreme Court precedents). Accordingly, Ryan's motion is **denied.**

**CONCLUSION**

For the foregoing reasons, the Court **grants in part and denies in part** the government's Motion for Reconsideration, and

adheres to its earlier ruling granting Ryan's Motion to Suppress (Doc. 80); **denies** Ryan's motion regarding the government's burden to prove the use of real children through expert testimony (Doc. 40); **denies** Ryan's Motion to Dismiss Counts Two and Five of the Superseding Indictment (Doc. 71); and **denies as moot** Ryan's Motion to Dismiss (Doc. 41) and Amended Motion to Dismiss (Doc. 70).

Dated at Burlington, Vermont this 26th day of May, 2009.

/s/ William K. Sessions III
William K. Sessions III
Chief Judge